**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

------------------------------------X
:
TRIBORO HARDWARE & INDUSTRIAL : Civil Action No. 19-13416
SUPPLY CORP., :
:
                    *Plaintiff*, : **COMPLAINT**
:
      - against - : **JURY TRIAL DEMANDED**
:
JUSTIN A. GREENBLUM, :
:
                    *Defendant*. :
:
------------------------------------X

      Plaintiff Triboro Hardware & Industrial Supply Corp. as its Complaint against Defendant Justin A. Greenblum, Esq., by and through its attorneys Arnold & Porter Kaye Scholer LLP, alleges as follows:

## NATURE OF THE ACTION

      1.    This is an action to recover damages arising from the failure of Defendant Justin A. Greenblum ("Greenblum") to repay hundreds of thousands of dollars he borrowed from Plaintiff Triboro Hardware & Industrial Supply Corp. ("Triboro") while he was acting as Triboro's counsel in active litigation.

      2.    Abusing his position as Triboro's trusted advisor and counsel, Greenblum asked Triboro to provide him with a series of interest-free loans. In May 2017, only a month after Triboro retained him, and before he had filed the complaint he was engaged to pursue, he borrowed $120,000. By September 2018, Greenblum had asked for and received five loans from Triboro, ultimately borrowing a total of $450,000 from his client.

      3.    More than eight months have now passed since Triboro first requested repayment, but Greenblum still has not repaid much of the debt. Instead, Greenblum has strung Triboro

along through highly emotional pleas, as well as by purporting to offer a confession of judgment in Triboro's favor.  For example, professing mortification at having betrayed his former client, Greenblum has made numerous promises to "make it right" and provide Triboro "whatever you need."  Yet Greenblum has not followed through on his many promises, instead making one excuse after the next.  At this point, Greenblum has left Triboro with no choice but to commence litigation to recoup its losses.

## PARTIES

4. Plaintiff Triboro is an industrial supply company that sells construction materials and hardware to contractors and sub-contractors.  Triboro is wholly owned by George Filosa, who is also Triboro's President.  Triboro is incorporated under the laws of New Jersey, and has a principal place of business of 120 Edward Hart Drive, Jersey City, NJ 07305.  Triboro is a citizen of New Jersey for purposes of 28 U.S.C. § 1332(c).

5. Defendant Greenblum is an attorney licensed to practice in the states of New York and New Jersey.  From at least April 11, 2017 to approximately November 2018, he was a partner at a New York City law firm ("Firm # 1").  On or about November 1, 2018, he left Firm # 1 and joined a different law firm in New York ("Firm # 2").  He is a New York resident with an address of 1452 Drumgoole Rd W, Staten Island, NY 10312.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) based on diversity of citizenship of Greenblum, a New York citizen, and Triboro, a New Jersey citizen.

7. The amount in controversy, without interest and costs, exceeds $75,000.00.

8. Venue lies in the District of New Jersey pursuant to 28 U.S.C. § 1391(b).

## FACTS

### A. Greenblum's Loans from Plaintiff, His Client

9. On or about April 11, 2017, Filosa engaged Greenblum, then a partner at Firm # 1, to recover unpaid trade debts owed to Triboro, and to assist Triboro, Filosa, and Filosa's wife, Linda Filosa on other related matters.

10. Filosa and Greenblum executed an engagement letter dated April 11, 2017.

11. In or about May of 2017, before even filing a complaint on his clients' behalf, Greenblum requested a loan from Filosa for approximately $120,000.

12. Filosa trusted Greenblum, Triboro's counsel and advisor, and accordingly lent him the money.

13. On or about May 31, 2017, Triboro lent Defendant $120,000, bearing no interest, which Greenblum promised to repay.

14. On June 30, 2017, Greenblum filed a complaint on Triboro's behalf against a Triboro customer for unpaid trade debts. That case was captioned <u>Triboro Hardware & Industrial Supply Corp. v. Industrial Urban Corp.</u>, L-2738-17 (Hudson Cty., NJ) (the "Hudson County Action").

15. After filing the complaint in the Hudson County Action, Greenblum continued to leverage his client's trust by seeking and receiving several more interest-free loans.

16. On August 30, 2017, the defendants in the Hudson County Action filed an answer to Triboro's complaint, along with counter-claims and a third-party complaint asserting causes of action against Filosa and Linda Filosa.

17. On or about October 30, 2017, Greenblum requested and Triboro provided an additional $150,000 interest-free loan, which Greenblum again promised to repay.

18.  Approximately two days later, on November 1, 2017, Greenblum filed a motion to dismiss the counter-claims and third-party complaint in the Hudson County Action.

19.  On May 23, 2018, after the Court granted the motion to dismiss, defendants in the Hudson County Action filed new counter-claims against Triboro, and a third-party complaint against Filosa.

20.  On or about June 26, 2018, Greenblum requested and received an additional $5,000 interest-free loan from Triboro, which Greenblum again promised to repay.

21.  Shortly thereafter, on July 5, 2018, Greenblum moved on behalf of Triboro and Filosa to dismiss the defendants' counter-claims and the third-party complaint in the Hudson County Action.

22.  On or about July 18, 2018, Greenblum requested another $85,000 interest-free loan from Filosa.  Greenblum also claimed he would "writ[e] off the entire remaining balance for my firm[']s invoices.  So those will be 0."  At that time, Greenblum was still a partner at Firm # 1.

23.  On or about August 1, 2018, while the motion to dismiss was pending and discovery was open, Greenblum requested and received an additional $85,000 interest-free loan from Triboro, which Greenblum again promised to repay.

24.  On or about September 5, 2018, Greenblum requested and received another $90,000 interest-free loan from Triboro, which Greenblum again promised to repay.  As of September 5, 2018, the total amount of the loan was $450,000.

25.  Rule 1.8 of the Rules of Professional Conduct in both New York and New Jersey governs a lawyer's ability to enter into business transactions with his or her clients.  This rule requires that the terms of the such a transaction be fair and reasonable, and be fully disclosed in

writing to the client.  Further, the rule requires the lawyer to advise the client that the client should seek advice from independent legal counsel.  Finally, the rule requires the lawyer to obtain the client's informed consent to the essential terms of the transaction in a writing signed by the client.

26. At no point during the mounting of the loan balance did Greenblum transmit the terms of any of these loans in writing to Triboro or Filosa.

27. Nor did Greenblum ever advise Triboro or Filosa that he could or should seek the advice of independent legal counsel concerning any of these loans.

28. Greenblum also never sought or obtained Triboro's or Filosa's informed consent in writing to the essential terms of any of these loans.

**B.     Greenblum's Minimal Repayments**

29. Over the course of the following months, Greenblum repaid only a portion of his debt to Triboro, bouncing several checks in the process while repeatedly promising that repayment was imminent.

30. For example, on or about September 18, 2018, Greenblum gave Filosa a $100,000 check, purportedly to repay a portion of the $450,000 debt.

31. On September 20, 2018, Filosa attempted to deposit this $100,000 check into Triboro's account, but the bank returned the check for insufficient funds.

32. On or about November 1, 2018, Greenblum left Firm # 1, at which he was a partner, to join Firm # 2.

33. When Greenblum left Firm # 1, Firm # 1 was unaware that Greenblum had promised to write off the remaining balance of Filosa's invoices.  Accordingly, on November 5, 2018, Firm # 1 sent an email to Filosa claiming that they were owed $141,601.79 and that

"[Greenblum] assured us that the full amount of these invoices would be paid by the end of last week."

34. On November 12, 2018, after Filosa informed Greenblum that Firm # 1 was seeking these fees from Filosa, Greenblum texted Filosa the following:

> Mon, Nov 12, 10:30 AM
>
> I will also be giving u a check next week for my firm. You can just tell them that it will be paid by end of this month. I get my money from my new firm this month. Ty for your Patience. Ill get you fully whole soon.

35. Despite Greenblum's promise to deliver a check by the week of November 19, 2018, no such payment occurred.

36. In reliance on Greenblum's promise, Filosa did not pay Firm # 1's bill.

37. On December 27, 2018, Greenblum texted Filosa the following:

> Thu, Dec 27, 12:58 PM
>
> I will have a check for u for 140k shortly. And another 250k in a few weeks. To knock it down substantially. I am getting my sign on very soon from my firm. Appreciate the patience. And btw - i am not billing u anything from here on out through the whole case.

38. Again because of Greenblum's Promise, Filosa continued not to pay Firm # 1's bill.

39. On January 2, 2019, Greenblum claimed that he would "come by [Filosa's] office on Friday [January 4, 2019] with [a] bank check."

40. Greenblum failed to provide any check whatsoever by January 4, 2019. Instead, on January 11, 2019, Greenblum made a $40,000 payment, reducing the balance to $410,000.

41. Meanwhile, on or about January 4, 2019, Greenblum's former firm sued Triboro, Filosa, and Linda Filosa for $141,601.79. Filosa had not paid this amount based on Greenblum's prior representations that he would either "write off" the amounts due to Firm # 1, or would provide Filosa with a check to repay Firm # 1.

42. On January 8, 2019, Filosa informed Greenblum about Firm # 1's lawsuit. In response, Greenblum texted Filosa:

> I saw that. I am giving u the check in full.
>
> I will handle it.  On my daughter i will.  I would never ever let anything to happens to u. Ill be st ur office tomorrow.
>
> I ask u just pls let me handle it.

43. On January 28, 2019, Greenblum gave Filosa two $50,000 checks: one post-dated February 1, 2019, and the other post-dated February 15, 2019. But, when Filosa attempted to deposit these checks on or after those dates, they both bounced.

44. On February 5, 2019, after the first of these checks bounced, Greenblum texted and said that he would send a bank-certified check to Filosa by FedEx on February 6, 2019. On February 8, 2019, Greenblum hand-delivered a bank-certified check to Filosa in the amount of $50,000.

45.     Greenblum failed to replace the second of the post-dated checks, despite receiving notice that it had been returned for insufficient funds.

### C.    Substitution of Counsel

46.     Greenblum's failure to repay the debt, exacerbated by the litigation filed by Firm # 1, made his continued representation of Triboro and the Filosas untenable.  Accordingly, on or about February 4, 2019, Triboro and the Filosas terminated Greenblum's services and retained new counsel.  On that date, Filosa informed Greenblum by email that Triboro and the Filosas had retained new counsel, and that Greenblum should cease working on the Hudson County Action.  Arnold & Porter, Triboro's and the Filosas' new counsel, filed a formal substitution of counsel in the Hudson County Action on February 6, 2019.

47.     In response to the notice of termination, Greenblum texted Filosa the same day:

> Hey. I saw ur email this morning.  I Apologize deeply that you had to make that decision. Can u please call me so we can discuss repayment towards you.  I still consider u a friend and want to make this right.

> I understand your decision completely, and its final.  I know that.  I just want to make it right.

### D.    Costs Associated With Substitution

48.     By the time of this substitution, Triboro and the Filosas had already paid Firm # 1 approximately $225,000 in fees and expenses.

49.     In order to accomplish the effective transition to new counsel, Triboro and the Filosas incurred more than $60,000 in legal fees.  Among other things, Triboro's new counsel

8

was required to become familiar with documents, pleadings, and transcripts, repeating Greenblum's work. In addition, new counsel spent considerable time and effort corresponding with Triboro, Filosa, and opposing counsel, and effecting the formal substitution of counsel.

50. Triboro also incurred approximately $10,000 in legal fees to settle the action brought by Firm # 1 against Triboro and the Filosas.

51. Triboro and Filosa would not have incurred these fees had Greenblum not breached the fiduciaries duties or contractual obligations he owed to his client.

### D. Greenblum's Stalling Tactics

52. On March 28, 2019, Triboro, through its new attorneys, demanded by letter that Greenblum repay the remaining $360,000 by bank check by close of business on April 1, 2019.

53. Greenblum failed to repay any of the outstanding amount on April 1, 2019. Instead, ignoring that Triboro and Filosa were represented by counsel, Greenblum texted Filosa on April 1, 2019:

> Mon, Apr 1, 4:27 PM
>
> Didn't forget. Doing everything in my power to get it done as quickly as possible. I should be able to drop off a bnk check tomorrow. I am getting everything sorted out for u and getting it cleared.

54. Despite that assurance, Greenblum failed to make any payment on April 2, 2019. Instead, without copying counsel, Greenblum texted on April 3, 2019, that "I will get [yo]u [yo]ur b[a]nk check."

55. Greenblum's stalling tactics continued through April and May 2019. In addition to repeated promises to repay all or part of the debt, Greenblum dangled the prospect that he

9

would execute a confession of judgment for more than he owed. That offer has proven to be as hollow as Greenblum's earlier promises.

56. For example, on or about April 5, 2019, again without notice to Triboro's and Filosa's counsel, Greenblum texted Filosa:

> I was up most of the night last night reorganizing all my finances to plan for $500k. I am finishing that today with the realistic schedule. Ill give you a confession of judgment or whatever other document you need to put it in writing. Like i said, im not running from this at all. I want it done as quickly as possible and i want u absolutely whole. I reach out to u ltr today. Just pls let me get the real schedule on paper for you.

57. On or about April 8, 2019, after Filosa inquired into the status of repayment, Greenblum again texted Filosa:

> Yes. I was just texting you. I reorganized all my finances over the weekend. And have it on paper. So it can be kept to a schedule. I can give you 25k this month. 25k next month. After that I will have big chunks, in the 50-75k range. I also have a 150k distribution that I am getting in the second quarter. All of my available cash Is going towards you. I will prepare the confession of judgment for 500k. This is the absolute best I can do and keep to it.

58. On or about April 11, 2019, with no confession of judgment on the horizon, Greenblum again texted Filosa directly:

> Thu, Apr 11, 8:13 AM
>
> Hey. So ill have the 25k for you next week. Ill also give u the confession of judgment. Ill knock this down for you and complete it as fast as possible. Again, i sincerely apologize. You have a lot of more important things to worry about than this. All I want to do is do right by you. I never intended at anytime to do anything but the right thing.

59. The following week, instead of providing $25,000, Greenblum delivered two bank checks totaling $22,000: one check for $12,000 was dated April 18, 2019, and one check for $10,000 was dated April 19, 2019. These payments reduced the outstanding debt to $338,000. Despite his promises, Greenblum failed to provide Filosa with a confession of judgment.

60. On May 2, 2019, Triboro's counsel sent Greenblum an email with an attached draft confession of judgment for $388,000—substantially less than Greenblum had offered to pay, but more than the amount outstanding on the loan. Triboro sought that amount as a reasonable offer to fully repay the remaining loan balance and for a portion of the legal fees Triboro had incurred as a result of Greenblum's actions, including fees incurred from the transition to new legal counsel in the Hudson County Action, and fees incurred in attempting to collect the outstanding loan amount from Greenblum.

61. Triboro's counsel asked Greenblum to execute and return the affidavit accompanying the confession of judgment by no later than May 8, 2019. To date, Greenblum has failed to do so.

62. As of the date of this Complaint, Greenblum has made only four partial payments of the $450,000 he borrowed: $40,000 on January 11, 2019; $50,000 on February 7, 2019; $12,000 on April 18, 2019; and $10,000 on April 19, 2019. Greenblum has otherwise failed to repay any amounts owed to Triboro. Accordingly, the amount outstanding is $338,000.

63. Before even filing the instant complaint, Triboro has incurred more than $10,000 in legal fees seeking repayment from Greenblum.

## Count One

### Breach of Contract

64. Triboro repeats and re-alleges each of the above allegations as though fully set forth in this Count.

65. Triboro agreed to lend Greenblum approximately $450,000, on the condition that Greenblum repay that amount.

66. Greenblum agreed to repay all amounts he borrowed from Triboro.

67. These agreements formed a valid and binding contract, pursuant to which Greenblum was obliged to repay Triboro the entire $450,000.

68. Greenblum has breached this contract by failing to repay the remaining $338,000 within a reasonable time, despite Triboro's repeated demands.

69. Triboro has performed all of its obligations under the parties' agreements by lending Greenblum the requested amounts.

70. Triboro also suffered other damages as a direct result of Greenblum's failure to repay. These included: (a) Triboro's necessary termination of Greenblum's services in

connection with the Hudson County Action; (b) Triboro's retention of new counsel in connection with the Hudson County Action; (c) Triboro's retention of counsel to recover Greenblum's debts; (d) Triboro's incurring fees necessary to allow its new counsel to become familiar with the Hudson County Action and to effect the substitution of counsel; and (e) Triboro's incurring fees necessary to settle the lawsuit Firm # 1 brought against it and the Filosas.

71. At the time the loans were made, these events were reasonably foreseeable to occur in the event of Greenblum's default, and were reasonably within the contemplation of Greenblum and Triboro.

72. As a result, Triboro has been damaged in an amount to be determined at trial, but in no event less than $418,000, including $338,000 in direct damages and at least $80,000 in consequential damages.

**Count Two**

**Unjust Enrichment**

73. Triboro repeats and re-alleges each of the above allegations as though fully set forth in this Count.

74. Greenblum benefitted at Triboro's expense because Greenblum received $450,000 from Triboro in exchange for promising to repay Triboro that amount.

75. Despite promising to repay the entire $450,000 Triboro lent to Greenblum, Greenblum has failed to repay $338,000 within a reasonable time, notwithstanding Triboro's repeated demands for repayment.

76. It would be against equity and good conscience to permit Greenblum to retain that $338,000 because Greenblum (a) received this amount only because he promised to repay it; (b) used his fiduciary relationship with Triboro and Filosa to obtain this amount, despite owing

Triboro and Filosa the utmost duties of care, candor, and loyalty; and (c) has repeatedly misled his former clients by falsely assuring them that repayment is imminent.

77. Greenblum has been unjustly enriched by this conduct, and Triboro has been harmed, in an amount to be determined at trial, but in no event less than $338,000.

### Count Three

### Promissory Estoppel

78. Triboro repeats and re-alleges each of the above allegations as though fully set forth in this Count.

79. Greenblum promised to repay the $450,000 loan from Triboro.

80. In reasonable and foreseeable reliance on this promise, Triboro lent $450,000 to Greenblum without charging any interest.

81. As a result of this reasonable and foreseeable reliance, Triboro was harmed by Greenblum's repeated failures to repay the remaining $338,000 balance.

82. Triboro has been harmed as a result of this reliance in an amount to be determined at trial, but in no event less than $338,000.

### Count Four

### Breach of Fiduciary Duty

83. Triboro repeats and re-alleges each of the above allegations as though fully set forth in this Count.

84. As Triboro's attorney from on or about April 11, 2017, through on or about February 4, 2019, Greenblum owed fiduciary duties to Triboro, including duties of care, candor, and loyalty.

85. Greenblum breached his duty of loyalty to Triboro by elevating his own pecuniary interests over Triboro's, including by requesting, receiving, and subsequently failing to repay $338,000 in interest-free loans while acting as Triboro's counsel in the Hudson County Action.

86. Greenblum also breached his duty of candor by (a) repeatedly assuring Triboro that he would repay the amounts he owed to Triboro and execute a confession of judgment, but failing to do so; and (b) failing to disclose all facts and circumstances bearing on his ability to repay the loans at the time the loans were made and at any time thereafter.

87. Greenblum also breached the duty of care he owed to Triboro by failing to act in a reasonably prudent manner by, among other things, failing to promptly repay $338,000 in loans upon request from Triboro while actively representing Triboro in the Hudson County Action.

88. Greenblum further breached these duties by obtaining $338,000 in interest-free loans from his clients while failing to adhere to the standards for his conduct set forth in the Rules of Professional Conduct, by failing to: (a) transmit the terms of any of the loans in writing to Triboro or Filosa; (b) advise Triboro or Filosa that they could or should seek the advice of independent legal counsel concerning the loans; or (c) seek or obtain Triboro's or Filosa's informed consent in writing to the essential terms of the loans.

89. These breaches directly and proximately caused harm to Triboro. These included (a) Triboro's necessary termination of Greenblum's services in connection with the Hudson County Action; (b) Triboro's retention of new counsel in connection with the Hudson County Action; (c) Triboro's retention of counsel to recover Greenblum's debts; (d) Triboro's incurring fees necessary to allow its new counsel to become familiar with the Hudson County Action and to effect the substitution of counsel; and (e) Triboro's incurring fees necessary to settle the lawsuit Firm # 1 brought against it and the Filosas.

90. Triboro has been harmed as a direct result of Greenblum's disloyal, dishonest, and negligent conduct in an amount to be determined at trial, but in no event less than $418,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Triboro Hardware & Industrial Supply Corp. respectfully requests that the Court award to Triboro:

1. Judgment against Justin A. Greenblum, for all general, special, incidental, and consequential damages incurred, or to be incurred, as the direct and proximate results of Greenblum's actions and omissions, in an amount to be proven at trial, but in no event less than $418,000, including:

   a. $338,000 for the remaining loan balance;

   b. At least $60,000 for fees incurred to achieve the effective substitution of counsel in the Hudson County Action;

   c. At least $10,000 for fees incurred to settle the lawsuit brought by Firm # 1;

   d. At least $10,000 for fees incurred before this case was filed to attempt to collect the amounts Greenblum owed.

2. Costs, disbursements, and reasonable attorneys' fees incurred;

3. Such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Triboro hereby demands a trial by jury on all issues so triable.

Dated: Newark, New Jersey
      June 4, 2019

ARNOLD & PORTER KAYE SCHOLER LLP

/s/ Paul J. Fishman
Paul J. Fishman (ID # 036611983)
One Gateway Center, Suite 1025
Newark, NJ 07102
(973) 776-1901
Paul.Fishman@arnoldporter.com

*Attorneys for Triboro Hardware & Industrial Supply Corp.*