Paul J. Fishman (ID # 036611983)
One Gateway Center, Suite 1025
Newark, NJ 07102
(973) 776-1901
Paul.Fishman@arnoldporter.com
*Attorney for Triboro Hardware &*
*Industrial Supply Corp.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRIBORO HARDWARE & INDUSTRIAL SUPPLY CORP., <br><br> *Plaintiff*, <br><br> - against - <br><br> JUSTIN A. GREENBLUM, <br><br> *Defendant*. | Civil Action <br> No. 2:19-cv-13416-ES-SCM <br><br> **DECLARATION OF GEORGE FILOSA IN SUPPORT OF PLAINTIFF TRIBORO HARDWARE & INDUSTRIAL SUPPLY CORP.'S MOTION FOR FINAL JUDGMENT BY DEFAULT** |

Pursuant to 28 U.S.C. § 1746, I, George Filosa, declare as follows:

1. I am the owner and President of Triboro Hardware & Industrial Supply Corporation ("Triboro"), a company located in Jersey City and incorporated under the laws of New Jersey. A copy of Triboro's corporate disclosure statement is attached as Exhibit A.

1

2. On or about April 11, 2017, I engaged Justin A. Greenblum, Esq. ("Greenblum") to bring litigation to recover accounts receivable from various customers and to assist Triboro, my wife Linda Filosa, and me on other related matters. At that time, Greenblum was a partner at Carter, Ledyard & Milburn LLP ("Carter Ledyard").

3. On or about May 2017, before Greenblum filed a complaint in the collection matter for which I retained him, he requested that I lend him approximately $120,000. Based on my existing trust and confidence in him, I authorized Triboro to lend Greenblum $120,000 on or about May 31, 2017. Greenblum promised to repay the money in one month, i.e., by June 30, 2017.

4. On June 30, 2017, Greenblum filed a complaint in the New Jersey Superior Court in Hudson County on Triboro's behalf against Industrial Urban Corp., a Triboro customer, for unpaid trade debts. That case was captioned *Triboro Hardware & Industrial Supply Corp. v. Industrial Urban Corp.*, L-2738-17 (Hudson Cty., NJ) (the "Hudson County Action"). Greenblum did not repay the $120,000 as promised on that date.

5. At the time, there was already pending another litigation among the owners of Industrial Urban Corp. in the New Jersey Superior Court in Essex County, captioned *Frisina v. Fama*, ESX-L-6305-17 (Essex Cty,. N.J.) (the "Essex County Action"). Although neither I nor Triboro ever was a party to the Essex County

Action, it was important that my attorney be familiar with that matter. Accordingly, Greenblum reviewed the publicly available information relating to that matter, including the transcript of a 13-day hearing.

6. On or about October 30, 2017, Greenblum requested an additional $150,000 interest-free loan from me, which he promised to repay, along with the $150,000 he had borrowed earlier, by December 1, 2017. Once again, based on my trust and confidence in him, I authorized Triboro to lend Greenblum the full amount. Over the next several months, Greenblum continued to request, and I continued to authorize, additional interest-free loans varying in amounts, including $5,000 on or about June 26, 2018; $85,000 on or about July 18, 2018; $85,000 on or about August 1, 2018; and $90,000 on or about September 5, 2018. By September 5, 2018, the total amount of Triboro's outstanding loans to Greenblum was $450,000.

7. Each time I authorized Triboro to lend Greenblum the requested amounts, he assured me that he would repay Triboro in full. In addition, on or about July 18, 2018, in connection with Greenblum's request for $85,000, he claimed he would "writ[e] off the entire remaining balance for my firms [*sic*] invoices. So those will be 0." That text is attached as Exhibit B.[1] As a result of that text, and my ongoing litigation needs, I believed that I was protected: if necessary, Greenblum

---

[1] Exhibit B has been redacted to preserve information protected by the attorney-client privilege.

3

would deduct the amounts he owed Triboro from the fees that I would otherwise owe to Carter Ledyard for the legal services he was providing.

8.  At no point during the mounting of the loan balance did Greenblum ever advise me that I should memorialize the terms of Triboro's loans to him. Nor did Greenblum ever advise Triboro or me to seek the advice of independent legal counsel concerning any of these loans. Greenblum also never sought or obtained Triboro's or my informed, written consent to the essential terms of any of these loans.

9.  Despite his repeated promises to me that payment was imminent, Greenblum repaid only a portion of his debt to Triboro. Even when Greenblum did make payments, many of his checks were rejected due to insufficient funds. For example, on or about September 18, 2018, Greenblum gave me a check for $100,000 to repay a portion of the $450,000 debt. I attempted to deposit that check into Triboro's account on September 20, 2018, but the bank returned the check for insufficient funds.

10. On or about November 1, 2018, Greenblum left Carter Ledyard to join another firm. Based on information and belief, Greenblum never told Carter Ledyard that he had promised to write off or cover the remaining balance of Triboro's invoices.

11. On November 12, 2018, after I informed Greenblum that Carter Ledyard was seeking these fees, Greenblum texted me the following:

> Mon, Nov 12, 10:30 AM
>
> I will also be giving u a check next week for my firm. You can just tell them that it will be paid by end of this month. I get my money from my new firm this month. Ty for your Patience. Ill get you fully whole soon.

In reliance on Greenblum's promise, I did not pay Carter Ledyard's bill. However, I never received the check from Greenblum.

12. On December 27, 2018, I received another text from Greenblum:

> Thu, Dec 27, 12:58 PM
>
> I will have a check for u for 140k shortly. And another 250k in a few weeks. To knock it down substantially. I am getting my sign on very soon from my firm. Appreciate the patience. And btw - i am not billing u anything from here on out through the whole case.

Again because of Greenblum's promise, I continued not to pay Carter Ledyard.

13. On or about January 4, 2019, Carter Ledyard sued Triboro, my wife, and me for $141,601.79. I had not paid this amount based on Greenblum's prior representations that he would either "write off" the amounts due to Carter Ledyard, or would provide me with a check to cover the invoices.

5

14. On January 8, 2019, when I informed Greenblum of the lawsuit, he texted me the following:

> I saw that. I am giving u the check in full.
>
> I will handle it. On my daughter i will. I would never ever let anything to happens to u. Ill be st ur office tomorrow.
>
> I ask u just pls let me handle it.

15. Greenblum did not handle anything with Carter Ledyard. Instead, on January 11, 2019, Greenblum made a $40,000 payment, reducing the balance he owed Triboro to $410,000.

16. On January 28, 2019, Greenblum gave me two $50,000 checks: one post-dated February 1, 2019, and the other post-dated February 15, 2019. I waited until February 1 to deposit the first of these checks; by February 5, 2019, that check had bounced. On February 5, 2019, I informed Greenblum that his first check bounced, and Greenblum texted and said that he would send a bank-certified check to me by FedEx on February 6, 2019. On February 8, 2019, Greenblum hand-delivered a bank-certified check to me in the amount of $50,000. Although I waited until February 15 to deposit the second post-dated check, that check bounced as well. Greenblum failed to replace the second of the post-dated checks, despite receiving notice that it too had been returned for insufficient funds.

17. In the meantime, on February 4, 2019, I terminated Greenblum's services and retained Arnold & Porter Kaye Scholer LLP ("Arnold & Porter") to represent me in the Hudson County Action, to handle the lawsuit by Carter Ledyard, and to assist in collecting from Greenblum. In response, Greenblum texted me the following:

> Hey. I saw ur email this morning. I Apologize deeply that you had to make that decision. Can u please call me so we can discuss repayment towards you. I still consider u a friend and want to make this right.

> I understand your decision completely, and its final. I know that. I just want to make it right.

18. Over the course of the next several months (and notwithstanding the fact that he knew I was represented by counsel), Greenblum continued to text me directly with empty promises of repayment. The texts include the following:

19. April 1, 2018:

> Mon, Apr 1, 4:27 PM
>
> Didn't forget. Doing everything in my power to get it done as quickly as possible. I should be able to drop off a bnk check tomorrow. I am getting everything sorted out for u and getting it cleared.

7

20. April 5, 2019

> I was up most of the night last night reorganizing all my finances to plan for $500k. I am finishing that today with the realistic schedule. Ill give you a confession of judgment or whatever other document you need to put it in writing. Like i said, im not running from this at all. I want it done as quickly as possible and i want u absolutely whole. I reach out to u ltr today. Just pls let me get the real schedule on paper for you.

21. April 8, 2019

> Yes. I was just texting you. I reorganized all my finances over the weekend. And have it on paper. So it can be kept to a schedule. I can give you 25k this month. 25k next month. After that I will have big chunks, in the 50-75k range. I also have a 150k distribution that I am getting in the second quarter. All of my available cash Is going towards you. I will prepare the confession of judgment for 500k. This is the absolute best I can do and keep to it.

22. April 11, 2019

> Thu, Apr 11, 8:13 AM
>
> Hey. So ill have the 25k for you next week. Ill also give u the confession of judgment. Ill knock this down for you and complete it as fast as possible. Again, i sincerely apologize. You have a lot of more important things to worry about than this. All I want to do is do right by you. I never intended at anytime to do anything but the right thing.

23. Despite all of these promises, Greenblum eventually delivered only two more bank checks totaling $22,000: one check for $12,000 dated April 18, 2019, and one check for $10,000 dated April 19, 2019.

24. As a result of Greenblum's failure to fulfill his obligation to repay the loans, on June 5, 2019, Triboro filed suit in this Court because I am a New Jersey resident, Triboro is a New Jersey Corporation, and Greenblum advised me that he resides in Staten Island. After the suit was filed, Greenblum made two more small payments: $2,500 on October 3, 2019; and $7,500 on or about October 7, 2019.

25. In total, Greenblum has made only six partial repayments toward the $450,000 he borrowed: $40,000 on January 11, 2019; $50,000 on February 7, 2019; $12,000 on April 18, 2019; $10,000 on April 19, 2019; $2,500 on October 3, 2019; and $7,500 on or about October 7, 2019. As a result, the remaining balance is $328,000.

26. All of these issues with Greenblum have resulted in my incurring additional legal expenses with Arnold & Porter. First, I needed to incur legal expenses to resolve the lawsuit with Carter Ledyard. Second, I required legal assistance in connection with this action to recover the loans to Greenblum. These efforts resulted in fees of $68,074.20 that I would otherwise have avoided.

27. I have instructed Arnold & Porter to provide their invoices to the Court supporting these amounts upon request. These fees are set forth in greater detail in the declaration of Paul Fishman, made in connection with this motion.

28. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

George Filosa

JEANNE M KIST
ID # 2177298
NOTARY PUBLIC
STATE OF NEW JERSEY
My Commission Expires May 11, 2020