**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **TRIBORO HARDWARE & INDUSTRIAL SUPPLY CORP.,** | |
| *Plaintiff,* | Civ. No. 19-13416 (ES) (JAD) |
| v. | OPINION |
| **JUSTIN A. GREENBLUM,** | |
| *Defendant.* | |

**MCNULTY, DISTRICT JUDGE**

Before the Court is the motion (DE 8) of plaintiff Triboro Hardware & Industrial Supply Corp. for default judgment against defendant Justin A. Greenblum. The matter has been reassigned from Judge Salas to me for purposes of this motion. Having considered Triboro's submissions, I decide this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). As set forth below, the motion for default judgment is GRANTED.

**I.    BACKGROUND**[1]

Triboro is an industrial supply company which sells construction materials and hardware to contractors and sub-contractors. (Complaint ¶ 4).

---

[1] Citations to documents in the record will be abbreviated as follows:

   Complaint = Triboro's complaint, DE 1
   Filosa Decl. = Declaration of George Filosa in support of the motion, DE 11
   Fishman Decl. = Declaration of Paul J. Fishman, counsel for Triboro, in support of the motion, DE 10
   Mov. Br. = Triboro's brief in support of its motion for default judgment, DE 9

1

Triboro is wholly owned by its president, George Filosa—a relevant nonparty to this action. (*Id.*). Defendant Justin Greenblum is an attorney licensed to practice in New York and New Jersey. (*Id.* ¶ 5).

In April 2017, Filosa engaged Greenblum to recover unpaid trade debts owed to Triboro and to assist Triboro, Filosa, and Filosa's wife on other related matters. (*Id.* ¶¶ 9–10). At the time, Greenblum was a partner at Carter, Ledyard & Milburn LLP. (*Id.* ¶ 9; Filosa Decl. ¶ 2). In the following months, Greenblum initiated and litigated a lawsuit on Triboro's behalf against a Triboro customer for the unpaid trade debts (the "Hudson County Action"). (*Id.* ¶¶ 14, 16, 18–19 & 21).

While acting as Triboro's attorney, Greenblum requested, and Triboro provided him with, a number of interest-free loans, which Greenblum promised to repay: (i) the first on May 31, 2017, in the amount of $120,000 (*id.* ¶¶ 11 & 13); (ii) the second on October 30, 2017, in the amount of $150,000 (*id.* ¶ 17); (iii) the third on June 26, 2018, in the amount of $5,000 (*id.* ¶ 20); (iv) the fourth on August 1, 2018, in the amount of $85,000 (*id.* ¶ 23); and (v) the fifth on September 5, 2018, in the amount of $90,000.00. (*id.* ¶ 24). As of September 5, 2018, the total loan balance was $450,000.00. (*Id.*).

The Complaint alleges that Greenblum, despite his professional obligation to do so, failed to put the terms of these loans in writing, advise Triboro or Filosa that he could or should seek the advice of independent legal counsel, or seek Triboro's or Filosa's informed consent in writing to the

essential terms of the loans. (*Id.* ¶¶ 25–28 (citing to Rule 1.8 of the Rules of Professional Conduct ("RPC") in New York and New Jersey)).

In the months that followed, Greenblum repaid only a portion of his debt to Triboro. In the process of doing so, Greenblum gave Filosa various checks which ultimately bounced (*see e.g., id.* ¶¶ 31 & 43) and sent Filosa several messages about repaying the loans (*see e.g., id.* ¶¶ 34, 37 & 42). Filosa also promised to write off the remaining balances of his law firm's invoices related to the Hudson County Action but never followed through on this promise. (*Id.* ¶¶ 22 & 33). In fact, to the contrary, Greenblum assured his law firm that the invoices would be promptly paid. (*Id.* ¶ 33). As a result, after Greenblum left Carter Ledyard, the firm initiated a lawsuit against Triboro, Filosa, and Filosa's wife to recover the unpaid invoices. (*Id.* ¶ 41). Triboro eventually settled this lawsuit with the help of newly hired counsel. (*Id.* ¶ 50).

To date, Greenblum has made six[2] partial payments towards the loan balance: a $40,000 payment on January 11, 2019; a $50,000 payment on February 7, 2019; a $12,000 payment on April 18, 2019; a $10,000 payment on April 19, 2019; a $2,500 payment on October 3, 2019; and a $7,500 payment on or about October 7, 2019. (*Id.* ¶ 62; Filosa Decl. ¶ 25). As a result, the outstanding loan balance is $328,000. (Filosa Decl. ¶ 25).

Based on the foregoing, Triboro initiated this action against Greenblum alleging claims for breach of contract, unjust enrichment, promissory estoppel,

---

[2] The complaint outlines only four partial repayments (Complaint ¶ 62), but Filosa clarifies that two additional payments were made after the Complaint was filed. (Filosa Decl. ¶¶ 24–25).

and breach of fiduciary duty. (Complaint ¶¶ 64–90). Triboro claims a total damages amount of $396,074.20[3], which includes damages for the remaining loan balance, fees incurred to settle the lawsuit brought by Greenblum's prior firm to recover Triboro's legal fees, and fees incurred in an attempt to collect the loan balance. (Mov. Br. at 6–7).

Because Greenblum has yet to appear in this action and respond to the Complaint, and at Triboro's request, the Clerk of Court entered default against him on August 20, 2019. Triboro now moves for default judgment pursuant to Federal Rule of Civil Procedure 55.

## II.   LEGAL STANDARD

A district court may enter default judgment against a party who has failed to plead or otherwise respond to the action filed against him. Fed. R. Civ. P. 55(b)(2). "[E]ntry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).

"Before entering default judgment, the Court must address the threshold issue of whether it has personal jurisdiction and subject matter jurisdiction over the parties." *Prudential Ins. Co. of Am. v. Bramlett*, No. 08-0119, 2010 WL 2696459, at *1 (D.N.J. July 6, 2010). Then, "the Court must determine (1) whether there is sufficient proof of service, (2) whether a sufficient cause of action was stated, and (3) whether default judgment is proper." *Teamsters*

---

[3]   In the Complaint, Triboro alleged $418,000 in damages (Complaint, Prayer for Relief). In its moving brief, Triboro clarifies that it no longer seeks the amount it paid to law firm Arnold & Porter to get up to speed in the Hudson County Action in preparation for and after substituting as counsel in the matter. (Mov. Br. at 7 n. 5).

4

*Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012) (internal citations omitted).

To determine whether granting default judgment is proper, the Court must make factual findings as to "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008). In making these determinations, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

### III.   ANALYSIS

#### A.   Jurisdiction

I am satisfied that that the Court has both subject matter and personal jurisdiction. The Court has subject matter jurisdiction based on diversity of state citizenship pursuant to 28 U.S.C. § 1332(a). Triboro, as a corporation, is deemed to be a citizen of any state by which it has been incorporated (here, New Jersey) and of the state where it has its principal place of business (also New Jersey). 28 U.S.C. § 1332(c)(1); (Complaint ¶ 4). Greenblum is alleged to be a citizen of New York. (Complaint ¶ 6). Triboro plausibly alleges an amount in controversy exceeding $75,000. (*Id.* ¶ 7).

As to personal jurisdiction, "a [d]istrict [c]ourt typically exercises personal jurisdiction according to the law of the state where it sits." *O'Connor v.*

*Sandy Lane Hotel Co. Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). New Jersey exercises long-arm jurisdiction over non-resident defendants to the extent consistent with due process of law. *HV Assocs LLC v. PNC Bank, N.A.*, No. 17-8128, 2018 WL 1731346, at *2 (D.N.J. Apr. 10, 2018) (citing *Avdel Corp. v. Mecure*, 277 A.2d 207, 209 (N.J. 1971)).

There are two distinct theories under which personal jurisdiction can arise: general and specific. *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994).

Here, Triboro has pled a *prima facie* case of specific personal jurisdiction. Greenblum purposefully directed his activities at the state of New Jersey by establishing and maintaining an attorney-client relationship with Triboro, litigating the Hudson County Action on Triboro's behalf, and entering into an agreement whereby he received nearly a half a million dollars from his New Jersey client. *See ACP GP, LLC v. United Home Care, Inc.*, No. 18-8786, 2018 WL 4693969, at *5 (D.N.J. Oct. 1, 2018) ("Where a party purposefully avails himself of the laws of New Jersey by entering an agreement with a New Jersey company whose effects would be felt in New Jersey, a court located in New Jersey may properly exercise personal jurisdiction over him."). Moreover, this litigation arises out of those contacts: Triboro alleges various causes of action stemming from the loan agreements and the parties' attorney-client relationship. I also am satisfied that exercising personal jurisdiction over Greenblum otherwise comports with fair play and substantial justice.

### B. Service of Process

I am also satisfied that there is sufficient proof of service. Triboro filed an affidavit of service, attesting that a process server personally served Greenblum at his office on June 18, 2019. (*See* DE 5). Such service satisfies the federal and state rules pertaining to service of process. Fed. R. Civ. P. 4(e)(1)-(2)(A); N.J. Ct. R. 4:4-4.

### C. Sufficient Cause of Action/Meritorious Defense

Before granting default judgment, the Court must ensure that the plaintiff has stated a sufficient cause of action. *See Wallace v. Fed. Employees of U.S. Dist. Court, EDPA*, 325 F. App'x 96, 101 (3d Cir. 2009). Courts in this district turn to the familiar Federal Rule 12(b)(6) standard in determining whether a sufficient cause of action has been stated. *See Mineo v. McEachern*, No. 12-01950, 2014 WL 2197032, at *2 (D.N.J. May 27, 2014) ("A court will deny a default judgment if the complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6)."). In the ordinary case, the issue of whether plaintiff has a legitimate cause of action will often overlap with the issue of whether the defendant has a meritorious defense. *See Ramirez v. Nacerima Indus.*, No. 10-01204, 2012 WL 3262466, at *1 (D.N.J. Aug. 8, 2012) ("[T]he Court finds that Defendants have a meritorious defense: namely, Plaintiff has failed to state a claim upon which relief can be granted.").

Triboro alleges four causes of action: (i) breach of contract (Count One); (ii) unjust enrichment (Count Two); (iii) promissory estoppel (Count Three); and (iv)

7

breach of fiduciary duty (Count Four). I primarily address the breach of contract and fiduciary claims, finding the others to be redundant.

### *i.*     *Breach of Contract*

To establish a cause of action for breach of contract, a plaintiff must plead three elements: (i) that a valid contract exists, (ii) that there was a breach of that contract, and (iii) resulting damages. *See Howard Johnson Int'l v. Jay Shree Ganesh,* No. 17-4658, 2018 WL 4005744, at *3 (D.N.J. Aug. 22, 2018).[4] A contract need not be in writing as long as the parties (i) agreed to do something that they did not previously have an obligation to do; (ii) agree on essential terms; and (iii) manifest an intention to be bound by those terms. *See Assadourian v. Harb,* No. 06-896, 2010 WL 2560495, at *4 (D.N.J. June 21, 2010), *aff'd,* 430 F. App'x 79 (3d Cir. 2011). Moreover, a contract that is not express may be implied-in-fact if it is manifested by conduct, and a contract may be implied-in-law if the contract sounds in a quasi-contractual theory of liability. *Scagnelli v. Schiavone,* 538 F. App'x 192, 193–94 (3d Cir. 2013) (citing *Wanaque Borough Sewerage Authority v. Township of West Milford,* 144 N.J. 564, 574, 677 A.2d 747 (1996)).

Here, Triboro does not allege that the parties had an agreement in writing which governed the terms of the loans and repayment. Rather, Triboro alleges a series of loan agreements, whereby Triboro had ultimately lent Greenblum approximately $450,000 on the condition that Greenblum repay the total

---

[4]     I apply New Jersey law to the state law claims, as there is no argument for the application of any other state's substantive law.

8

amount. According to Triboro, "these agreements formed a valid and binding contract." (Complaint. ¶ 67).

The first element of a breach of contract claim—a valid contract—is satisfied by the allegations. Specifically, the Complaint plausibly alleges an express contract (or series of contracts) whereby Triboro agreed to loan Greenblum a total of $450,000, and Greenblum agreed to repay those loans. In addition to alleging an express promise to repay each loan (Complaint ¶¶ 13, 17, 20, 23 & 24), Triboro's allegations demonstrate that Greenblum intended to be bound by the terms of the contract; indeed, he made minimum repayments towards the loan balance (*id.* ¶ 62), sent a number of text messages in which he repeated his promise to fully repay the loans (*id.* ¶¶ 34, 37, 42, 47, 53, 56, 57 & 58), and offered to sign a confession of judgment (*id.* ¶ 56).[5] Based on these facts, I am satisfied that Triboro has alleged a valid contract between the parties.

The second element of a contract claim, a breach of a contractual obligation, has also been adequately pled. Triboro alleges that, despite his promise to repay the entire amount of the $450,000 loan balance and repeated requests for payment, Greenblum has only repaid approximately $122,000. (*Id.* ¶ 68; Filosa Decl. ¶ 25).

As for the third element, damages, Triboro alleges that, as a result of the breach, it suffered direct damages in the amount of $328,000. (Mov. Br. at 6).

---

[5] At the very least, these subsequent actions created an implied-in-fact contract, whereby Greenblum's actions support a finding of mutual agreement and intent to promise. *See Saint Barnabas Med. Ctr. v. Essex Cty.*, 543 A.2d 34, 39 (N.J. 1988).

9

Assessment of a claim is inevitably hampered by the lack of an adversarial presentation of issues. Based on the record before me, however, I do not discern any meritorious defense that Greenblum may have to this breach of contract.

### ii.     *Unjust Enrichment and Promissory Estoppel*

As alleged in the complaint, the breach of contract claim, the unjust enrichment claim, and the promissory estoppel claim are all based on the same facts, specifically, Greenblum's promise and subsequent failure to repay the $450,000 loan from Triboro. (*See* Complaint ¶¶ 64–82). While such claims may be pled in the alternative, "at the end of the day, [all three] counts cannot co-exist." *See Smith v. Citimortgage, Inc.*, No. 15-7629, 2015 WL 12734793, at *7 (D.N.J. Dec. 22, 2015) (quoting *Kantor v. Hiko Energy, LLC*, No. 14-5585, 2015 WL 1650049, at *7 (E.D. Pa. Apr. 14, 2015)); *see also Zydus Worldwide DMCC v. Teva API Inc.*, 461 F. Supp. 3d 119, 141 (D.N.J. 2020) (collecting cases).

Because I conclude that Triboro has sufficiently stated a breach of contract claim, the unjust enrichment and promissory estoppel claims based on the same facts are duplicative and will be dismissed.

### iii.     *Breach of Fiduciary Duty*

To allege a breach of fiduciary duty claim, a plaintiff must plead (i) the existence of a fiduciary relationship between the parties; (ii) a breach of the duty imposed by that relationship; and (iii) resulting damages. *Ware Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 18-13895, 2019 WL 1470129, at *5 (D.N.J. Apr. 3, 2019).

These elements are sufficiently pled here. First, Triboro alleges that, as Triboro's attorney, Greenblum owed fiduciary duties to Triboro, including duties of care, candor and loyalty. *Cottone v. Fox Rothschild, LLP*, No. A-0420-12T4, 2014 WL 4287002, at *8 (N.J. Super. Ct. App. Div. Sept. 2, 2014) ("A lawyer stands as a fiduciary to a client, and thus incurs certain legal obligations, or 'duties,' once an attorney-client relationship is formed.").

Second, Triboro alleges that Greenblum (i) breached his fiduciary duty of loyalty by elevating his own pecuniary interests over Triboro's by requesting, receiving, and failing to repay loans provided by Triboro while acting as Triboro's counsel (Complaint ¶ 85); (ii) breached his duty of candor by failing to disclose all facts and circumstances bearing on his ability to repay the loans and by failing to make good on assurances that he would repay the amounts owed and execute a confession of judgment (*id.* ¶ 86); (iii) breached his duty of care by failing to act in a reasonably prudent manner by, among other things, failing to promptly repay the loans while actively representing Triboro in litigation (*id.* ¶ 87); and (iv) breached these various duties by obtaining a loan from his client while failing to adhere to the Rules of Professional Conduct governing such actions (*id.* ¶ 88).[6]

---

[6] That some of the allegations surrounding the breach of fiduciary duty claim overlap with those surrounding the breach of contract claim does not render it duplicative. *See Harding v. Jacoby & Meyers, LLP*, No. 14-5419, 2020 WL 468952, at *7 (D.N.J. Jan. 28, 2020) ("Professionals who owe fiduciary duties to their client . . . may be subject to tort liability independent from their contractual obligations as 'it is policy, not the parties' contract, that gives rise to a duty of due care.'").

These facts set forth a plausible claim for breach of fiduciary duty[7], particularly in light of Greenblum's apparent violation of RPC 1.8, his efforts to enrich himself at his client's expense, and his dilatory tactics and ultimate failure in paying back the loan. *See Harding*, 2020 WL 468952, at *5 ("[A violation of the RPCs . . . may provide evidence as to an attorney's breach of his fiduciary duty."); *In re Torre*, 127 A.3d 690, 693 (N.J. 2015) ("At all times, an attorney's duty of loyalty is to the client, and not the lawyer's personal financial interests. When a lawyer has an economic stake in a business transaction with a client, self-interest can undermine the attorney's objectivity."); *Lopez-Siguenza v. Roddy*, No. 13-2005, 2014 WL 4854452, at *6 (D.N.J. Sept. 30, 2014) ("Plaintiff must plead misconduct by [defendant] as a fiduciary, e.g., dishonesty, self-dealing, or breach of loyalty, beyond a breach of a duty of care.").

Third, Triboro alleges direct and proximate harm caused by the breach, including the necessary hiring of new counsel to terminate Greenblum's services and substitute counsel in the Hudson County Action, to recover the debts owed, and to settle the lawsuit brough by Greenblum's firm. (Complaint ¶ 15).

---

[7]   I note that "New Jersey courts have consistently recognized that claims that allege only a breach of the duty of care are legal malpractice claims, regardless of the terms in which they are couched." *Amboy Bancorporation v. Jenkens & Gilchrist*, No. 02-5410, 2008 WL 3833582, at *5 (D.N.J. Aug. 13, 2008). The conduct alleged here, however, goes beyond mere negligence.

Again, while I do not have the benefit of adversarial presentation of the issues, based on the record before me, I find that a fiduciary claim is stated and do not discern any meritorious defense.

### D.   Culpability and Prejudice

The remaining considerations for granting a default judgment, culpability and prejudice, require no extended discussion. The defendant has been served, and no good excuse is proffered for his failure to respond. The resulting prejudice is that the Triboro is impaired from pursuing its meritorious claims and recovering amounts owed.

### E.   Damages

"While the court may conduct a hearing to determine the damages amount, Fed. R. Civ. P. 55(b)(2), a damages determination may be made without a hearing as long as the court ensures that there is a basis for the damages specified in the default judgement." *Days Inns Worldwide, Inc. v. Panchal*, No. 15-1459, 2015 WL 5055318, at *2 (D.N.J. Aug. 25, 2015) (internal quotation marks and alterations omitted).

I am satisfied that there is an adequate basis for each of the categories of damages Triboro seeks. Specifically, I agree that Triboro is entitled to the outstanding loan balance ($328,000) as the amount it would have received if Greenblum performed under the contract. (*See* Mov. Br. at 6); *Totaro, Duffy, Cannova & Co., L.L.C. v. Lane, Middleton & Co., L.L.C.*, 921 A.2d 1100, 1107 (N.J. 2007). Second, Triboro may recover "all damages proximately caused by Greenblum's breach of his fiduciary duty," including attorneys' fees incurred to

13

recover on its loan to Greenblum and fees incurred in connection with the lawsuit brought by Greenblum's law firm. (*See* Mov. Br. at 7); *Packard-Bamberger & Co. v. Collier*, 771 A.2d 1194, 1203 (2001) (Explaining that if a breach of the duty of loyalty is brought "as an independent tort, a claimant is entitled to recover attorneys' fees so long as the claimant proves that the attorney's breach arose from the attorney-client relationship."); *In re Estate of Lash*, 776 A.2d 765, 771–72 (2001) ("A plaintiff has the right to recover attorney's fees incurred in other litigation with a third person, if he became involved in that litigation as a result of a breach of contract or tortious act by the present defendant."). Finally, I agree that Triboro is entitled to pre-judgment interest pursuant to state law and post-judgment interest pursuant to 28 U.S.C. § 1961. (Mov. Br. at 7 & n. 6).

However, I will require some additional proof as to the requested amounts before entering final judgment. Counsel for Triboro indicates that he did not submit attorney invoices for the Court's review due to the privileged information contained therein, but offered to submit them at the Court's request. (Fishman Decl. at 4 n.2). Although Filosa and counsel for Triboro have attested to the amount of attorneys' fees owed (Fishman Decl. ¶ 8; Filosa Decl. ¶ 26), I will request that counsel file the attorney invoices under seal for the Court's review.

Moreover, Triboro's moving brief suggests that pre-judgment interest is appropriate in tort actions but is silent as to whether pre-judgment interest is applicable to the damages flowing from the breach of contract claim. (Mov. Br.

14

at 7). Additionally, counsel for Triboro suggests a 2.5% pre-judgment interest rate (*see* Fishman Decl. ¶ 8(d)) but does not explain how he arrived at such a rate. Accordingly, Triboro shall supplement its submission to explain (i) whether pre-judgment interest is available as to the damages flowing from the tort claim only, or if pre-judgment interest is also available as to damages from the contract claim; and (ii) the propriety of a 2.5% pre-judgment interest rate to one or both claims.

The supplemental submission shall be filed within 10 days, together with a revised proposed form of judgment. Upon review of the supplemental submission, I will enter final judgment in Triboro's favor in an appropriate amount and close this case.

**IV.   CONCLUSION**

For the foregoing reasons, the motion for default judgment is granted. An appropriate Order accompanies this Opinion.

/s/ Kevin McNulty

_____
**Kevin McNulty, U.S.D.J.**